# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                            ) | CRIMINAL NO.  04-10338-WGY |
| ) | |
| SCOTT F. MCCREADIE,    ) | |
| ) | |
| Defendant.        ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits this memorandum in advance of the April 6, 2005 sentencing of Scott F. McCreadie ("McCreadie").  On January 18, 2005, McCreadie waived indictment and, pursuant to a plea agreement, pled guilty to a three count information (the "Information") charging him with one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff(a), and two counts of tax evasion, in violation of 26 U.S.C. § 7201.

### I. Background

The facts related to the offense set forth in the Information are not materially disputed by the parties and are summarized in the Presentence Report ("PSR") at ¶¶ 10-22.

### A.    Securities Fraud

In 1995 McCreadie married Jodi Maltz ("Jodi"), whose father Stanley Maltz ("Stanley") had been the owner of a successful floor covering business, Continental Carpet.  In 1995, Stanley sold Continental Carpet to Shaw Industries for about $6.5 million.  After receiving the money (which was paid over two years), Stanley set up trust accounts for his children (Jodi and David)

and grandchildren.  One of those accounts was called the Maltz Family 1996 Irrevocable Trust

(the "Maltz Family Trust").

In 1999 McCreadie was hired by Paine Webber as a financial advisor.  In October 1999,

Stanley transferred his multi-million dollar investment portfolio (in excess of $3 million) to

Paine Webber.  McCreadie became the financial advisor responsible for Stanley's accounts.[1]

From on or about April 2000 through June 2002, McCreadie misappropriated in excess of

$730,000 from the various Maltz accounts.  Although he engaged in a variety of deceptive acts

as part of his scheme, McCreadie's fraudulent scheme largely involved the use of forged Letters

of Authorization ("LOA's") and forged checks.  More specifically, McCreadie used forged

LOA's and forged checks to transfer funds from various Maltz Family accounts at Paine Webber

into a Paine Webber brokerage account he held jointly with his wife (the "Paine Webber

McCreadie Account") and a bank account he also held jointly with his wife at Sharon

Cooperative Bank (the "Sharon Cooperative Account").  He then either spent the money or used

it to trade stocks.

Sometimes McCreadie would use forged LOA's to transfer funds directly from the Maltz

Family accounts into the Paine Webber McCreadie Account.  Other times, McCreadie would use

forged LOA's to transfer funds from various Maltz Family accounts into the Maltz Family Trust

account.  McCreadie (who was not an authorized signatory on the Maltz Family Trust) would

then forge the signature of either his wife or his brother-in-law (who were signatories) on checks

---

[1] McCreadie worked in the Wellesley, Massachusetts Paine Webber office until mid-2001.  In mid-2001, Jodi and he (and their children) moved to Florida.  McCreadie transferred to the Paine Webber Palm Beach, Florida office.

made payable to his wife, which he then deposited into either the Paine Webber McCreadie Account or the Sharon Cooperative Account.

The transfers based on the forged LOA's and checks involved the purchases and sales of securities, including the sales of common stock and shares in money market mutual funds, including the Paine Webber RMA Money Market Portfolio.  In 2000 and 2001, the approximate total of funds McCreadie wrongfully diverted from the Maltz Family Accounts into the Paine Webber McCreadie Account and the Sharon Cooperative Account was $742,574 ($341,274 for 2000; $390,000 for 2001; and $11,300 for 2002).

McCreadie's scheme was discovered in June 2002, when Paine Webber bounced a check Stanley had written to American Express.  In order to cover the check, Stanley asked McCreadie to wire $100,000 to his checking account.  McCreadie never transferred the funds.  Stanley became concerned and called the Palm Beach Paine Webber branch.  The branch manager informed Stanley that he had little or no money left in his Paine Webber accounts.  McCreadie then left Florida and returned to Massachusetts.  Once there, McCreadie met with a friend and told him, "I f****d up.  All the money is gone."

**B.     Tax Evasion**

McCreadie and his wife filed joint federal income tax returns on Form 1040 for calendar years 2000 and 2001.  McCreadie filed his joint Form 1040 for calendar 2000 on or about October 17, 2001.  McCreadie filed his joint Form 1040 for calendar 2001 on or about April 15, 2002.  McCreadie's joint Form 1040 for 2000 failed to include the $341,274 he had misappropriated from the Maltz Family accounts during calendar year 2000.  McCreadie's joint Form 1040 for 2001 failed to include the $390,000 he had misappropriated from the Maltz

3

Family accounts during calendar year 2001. As a result, McCreadie and his wife substantially

under-reported their actual taxable income in 2000 and 2001. For 2000, the tax loss on the

under-reported income was approximately $110,000. For 2001, the tax loss on the under-

reported income was approximately $140,000.

## II.  Application of Guidelines

As set forth in the PSR (see ¶¶ 20-46) the relevant offense conduct yields the following

guidelines computation under the November 1, 2001 version of the Guidelines:

### Count 1 (Securities Fraud)

| | | |
|---|---|---|
| Base Offense Level | 6 | U.S.S.G. § 2B1.1(a) |
| Loss Enhancement | 14 | U.S.S.G. § 2B1.1(b)(1)(H) |
| Abuse of Trust | 2 | U.S.S.G. § 3B1.3 |
| **Total** | **22** | |

### Counts 2 and 3 (Tax Evasion)

| | | |
|---|---|---|
| Base Offense Level | 18 | U.S.S.G. § 2T1.1(a)(1) & 2T4.1(G) |
| Failure to Report Income exceeding $10,000 | 2 | U.S.S.G. § 2T1.1(b)(1) |
| **Total** | **20** | |

Because Counts 1, 2 and 3 should be grouped, the adjusted offense level in this matter is **22**.

See U.S.S.G. § 3D1.2(c) & 3D1.3(a).

The United States agrees that McCreadie should receive a credit of three levels for

acceptance of responsibility, thus giving him a **Total Offense Level of 19**. McCreadie is at

**Criminal History I.** (See PSR ¶ 52). The resulting Guidelines sentencing range is **30 to 37**

**months**. The fine range is **$6,000 to $1 million**.

### III.  Sentencing Recommendation

Pursuant to the terms of the parties' plea agreement, the United States recommends that the Court impose a sentence at the low end of the applicable guidelines range – i.e., imprisonment of 30 months (assuming the recommended range is accepted by the Court). Consistent with the plea agreement, the United States further recommends a fine of $6,000, restitution of $742,574, a mandatory special assessment of $300, and 3 years supervised release. (See Plea Agreement ¶ 4).

### IV.  McCreadie's Departure/§ 3553 Arguments

By objection dated March 17, 2005, McCreadie argues that there were circumstances "that would have compelled a downward departure under a pre-Booker regime" (PSR Objection #2) and requests that the Court impose a sentence below the guidelines sentencing range on two grounds: (a) McCreadie's family circumstances at the time of the offense, and (b) McCreadie's "diminished capacity."  Neither reason McCreadie has proffered provides an appropriate basis to impose a sentence below the guidelines range of 30 months.

The Court should reject McCreadie's claim that his "family circumstances" warrant a sentence below the guideline range.  Contrary to what McCreadie argues, his "family circumstances" would not have been a ground for departure.  In United States v. Pereira, 272 F.3d 76 (1st Cir. 2001), the First Circuit made clear that family hardship is neither atypical nor unusual when a family member is incarcerated.  For this reason, such hardships – without more – cannot justify a departure.  See id. at 80-83.  Moreover, the claimed "family circumstance" to which McCreadie points, namely, his wife Jodi's medical condition at the time of the offense, is not the type of family circumstance that is relevant for such a departure anyway.  A "family

circumstances" departure typically would be based on *current* family ties and responsibilities, not past family ties and responsibilities.  Today, McCreadie is divorced from Jodi, who has re-married and has custody of the children.  McCreadie now has few family responsibilities.

The Court should also reject McCreadie's "diminished capacity" argument.  As is noted in the PSR, McCreadie has not supplied sufficient factual support for the claim that he suffered from a diminished capacity at the time of the offense.

### Conclusion

For all of the foregoing reasons, the United States requests that McCreadie be sentenced within the applicable guideline range in accordance with the recommendation the United States has set forth above.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/  Jack W. Pirozzolo
Jack W. Pirozzolo
Assistant U.S. Attorney
United States Courthouse, Suite 9200
1 Courthouse Way
Boston, MA  02210
Dated: March 30, 2005                    (617) 748-3189

### CERTIFICATE OF SERVICE

This is to certify that on March 30, 2005, I served the foregoing document, via electronic means, upon R. Bradford Bailey, counsel for the defendant, and, by hand, upon Susan Walls of the U.S. Probation Office.

/s/ Jack W. Pirozzolo
Jack W. Pirozzolo